EXHIBIT 5

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **SAMPSON K. KYERE, JR.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 24-C-23-005020** |
| **LIFEBRIDGE HEALTH, INC.,** ***et al.*****,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION**

Micah E. Ticatch, Esq., No. 1910160002
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Defendants*

In this action, Plaintiff has asserted ten counts against Defendants relating to his prior employment at Sinai Hospital of Baltimore, Incorporated ("Hospital"). But, as part of his employment, Plaintiff agreed that "any controversy or claim arising out of [his] employment" would be subject to arbitration. Because all claims asserted in the First Amended Complaint are covered by that Arbitration Clause, this Court should compel arbitration and dismiss this action without prejudice.

## BACKGROUND FACTS

Plaintiff was formerly employed as a physician by the Hospital. *See* First Amended Complaint ("FAC") ¶ 26. As part of his employment, Plaintiff entered into a Letter of Agreement with the Hospital, effective June 1, 2021. *See* FAC ¶ 25; Declaration of Graham Fowler, Exhibit 1 (Letter of Agreement) ("LOA"). The Hospital is a subsidiary of Defendant LifeBridge Health, Incorporated ("LifeBridge").

Plaintiff's LOA specifically incorporated the Hospital's Standard Terms as part of the agreement. *See* LOA at 4 ¶ K. Among other things, those terms state:

> <u>[T]he exclusive method</u> for resolving <u>any controversy or claim arising out of a physician's employment</u>, <u>including any termination</u> or nonrenewal, will be as set out below. . .
>
> If a dispute arises between the Hospital and a physician, the physician and a representative of the Hospital will meet informally within seven days to discuss the areas of disagreement and negotiate in good faith regarding possible solutions. . .
>
> If that process is unsuccessful in resolving the dispute, and either the physician or the Hospital wishes to continue the dispute resolution process, <u>the dispute must be submitted to arbitration</u>.

*Id.*, Attachment 3, at 13-14 (the "Arbitration Clause") (emphasis added).

In early 2022, Plaintiff's supervisor, Dr. Daniel Durand, received input from Hospital staff that indicated Plaintiff might have an impairment, which might in turn put the Hospital's patients' safety at risk. *See* FAC ¶ 41. Dr. Durand initially wished to have two doctors informally observe Plaintiff while he worked, but Plaintiff refused to consent to that observation. *See id.* ¶¶ 46, 55, 83. Instead, Plaintiff insisted that any evaluation of him needed to be done through the Hospital's Impaired Physician Committee ("IPC"), which the Hospital eventually agreed to do. *See id.* ¶ 126. Among other individuals, the IPC committee included Defendants Dr. Elizabeth Zadzielski, Dr. Omar Zalatimo, and Dr. Durand as members. *See id.* ¶¶ 126, 375.

The IPC asked Plaintiff to undergo an evaluation through the Hospital's Aging Surgeon's Program, which Plaintiff ultimately refused. *See id.* ¶¶ 148, 152. After his refusal, the IPC withdrew that request and instead asked Plaintiff to undergo a functional capacity evaluation, as well as an evaluation by a neurologist and ophthalmologist. *See id.* ¶¶ 148, 153. Plaintiff refused this as well. Shortly thereafter, Plaintiff, through his counsel, negotiated a voluntary resignation in exchange for the IPC closing its investigation. *See id.* ¶ 172.

Despite the Arbitration Clause, on October 19, 2023, Plaintiff filed a complaint (Case No. 24C23004512) in Baltimore City Circuit Court against Defendants. Because that initial suit involved a claim under federal law, on November 20, 2023, Defendants jointly removed the case to the United States District Court for the District of Maryland and asked that court to compel arbitration. Plaintiff subsequently voluntarily dismissed that initial action.

On November 27, 2023, Plaintiff filed a new Complaint with this Court creating the instant case. Prior to service of the Complaint in this matter, Plaintiff filed his First Amended Complaint, the operative pleading, which was served on Defendants on December 6, 2023.

In the First Amended Complaint, Plaintiff alleges several claims against LifeBridge arising out of his employment, including:

- (i) discrimination based on an actual or perceived disability (Count 1);
- (ii) harassment based on disability (Count 2);
- (iii) improper medical inquiry and examination in violation of state law (Count 3);
- (iv) constructive discharge (Count 4);
- (v) retaliation for Plaintiff's request for a reasonable accommodation (Count 5);
- (vi) breach of the LOA (Count 7);
- (vii) breach of contract based on the Hospital's Bylaws (Count 8); and
- (viii) civil conspiracy (Count 10).

Additionally, Counts 1, 2, 3, 8, and 10 are also asserted against the individual Defendants as well. In Count 6, Plaintiff asserts a claim of tortious interference with the LOA against Dr. Durand. Finally, in Count 9, Plaintiff asserts a claim of gross negligence against Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo for their conduct as part of the IPC.

As explained below, Plaintiff should be compelled to arbitrate each of these claims.

## <u>ARGUMENT</u>

### A. MUAA Requires Enforcement of Arbitration Agreements.

The Arbitration Clause specifically states that the Maryland Uniform Arbitration Act ("MUAA") applies. *See* LOA, Attachment 3, at 13. As with the Federal Arbitration

Act, MUAA provides that a written agreement to arbitrate a dispute between the parties "is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." Md. Code Cts. & Jud. Proc. § 3-206(a); 9 U.S.C. § 2. The Act "expresses the legislative policy favoring enforcement of agreements to arbitrate." *Park Plus, Inc. v. Palisades of Towson, LLC*, 478 Md. 35, 49 (2022). As a result, a court's job on a motion to compel arbitration is reduced to "the resolution of a single issue—is there an agreement to arbitrate the subject matter of a particular dispute." *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 104 (1983). Furthermore, "where an arbitration agreement exists, ambiguities as to arbitrability [must] be resolved in favor of arbitration." *Rourke v. Amchem Prod., Inc.*, 384 Md. 329, 356 (2004).

**B. The Arbitration Clause is Part of an Enforceable Contract.**

The initial inquiry for the Court is whether the parties' agreement, which contains the Arbitration Clause, is enforceable. *See Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 590 (2006). In this case, there seems to be no dispute that the LOA is a valid agreement, as Plaintiff has sued to enforce the very same contract. In such circumstances, a plaintiff is estopped from arguing against the validity of the contract. *See Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006).

**C. All the Claims Against LifeBridge are Subject to Arbitration.**

LifeBridge[1] has the right to have all the claims asserted against it moved to arbitration. The Arbitration Clause encompasses "any controversy or claim arising out of

[1] The LOA is technically an agreement between LifeBridge's subsidiary, the Hospital, and Plaintiff. However, the First Amended Complaint treats LifeBridge and the Hospital as a

[Plaintiff's] employment, including any termination or nonrenewal." *See* LOA, Attachment 3, at 13-14. Counts 1, 2, 3, and 5 are claims that Plaintiff was subject to employment discrimination, which are claims that clearly arise out of Plaintiff's employment. *See*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 23 (1991) (compelling ADEA discrimination claim to arbitration as "arising out of employment").

Count 4 is a claim regarding Plaintiff's termination, which the Arbitration Clause explicitly encompasses. Likewise, Count 7 is a claim for breach of the employment terms in the LOA, and Count 8 is a claim for breach of the Hospital's bylaws, which Plaintiff alleges was a contract governing how the Hospital would interact with him during his employment. Finally, Count 10 is a conspiracy claim based on these alleged breaches and other discriminatory acts attributed by Plaintiff to all Defendants, resulting in the termination of his employment.

Since all these claims arise from Plaintiff's employment, they fit squarely within the Arbitration Clause, and Plaintiff must be compelled to arbitrate them.

Moreover, the fact that Plaintiff has named the individuals as joint Defendants in some of these claims does not alter the analysis in any way. The individuals were each agents and employees of LifeBridge during the relevant time period. *See*, *e.g.*, FAC ¶¶ 12-14 (Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo are all employees of the Hospital).

---

single entity. *See*, *e.g.*, FAC ¶¶ 24-25 (alleging Plaintiff was employed by LifeBridge under the LOA); ¶¶ 385-408 (asserting a claim for breach of the LOA against LifeBridge). Moreover, even if Plaintiff had alleged otherwise, LifeBridge could compel arbitration under agency and estoppel principles. *See Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (agency); *Horneffer v. St. Joseph Med. Ctr.*, 2012 WL 983782, at *5-6 (D. Md. 2012) (estoppel).

As such, the individual Defendants are entitled to compel arbitration for the claims made against them, which are covered by the scope of the Arbitration Clause. *See, e.g.*, *Dennie v. MedImmune, Inc.*, 2017 WL 2930462, at *4 (D. Md. 2017) ("Where a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *Neville v. Terminix Int'l Co. L.P.*, 2007 WL 9782564, at *2 (D. Md. 2007) ("[T]he agreement for which Terminix bargained would be of little value to Terminix if the agreement did not extend to the very agents that might prompt litigation against it.").

Consequently, Plaintiff should be compelled to arbitrate each of the claims asserted against LifeBridge and its employees, including Counts 1, 2, 3, 4, 5, 7, 8, and 10.

### D. Plaintiff's Tortious Interference Claim Against Dr. Durand is Subject to Arbitration.

In Count 6 of the Amended Complaint, Plaintiff alleges that Dr. Durand tortiously interfered with the LOA because he "induced [LifeBridge] to breach its contract with [Plaintiff.]" *See* FAC ¶¶ 379, 382. During the relevant period, Dr. Durand was an employee of the Hospital acting as Chairman of the Department of Radiology and Plaintiff's direct supervisor. *See id.* ¶ 12. Again, as an employee of the Hospital, Dr. Durand is entitled to compel Plaintiff to arbitration under the Arbitration Clause. *See, e.g.*, *Dennie*, 2017 WL 2930462 at *4.[2]

[2] In addition to agency principles, Dr. Durand also has standing to compel arbitration because Plaintiff alleges "interdependent and concerted misconduct" by Dr. Durand, LifeBridge, and the remaining Defendants, and thus, he is equitably estopped from avoiding the Arbitration Clause as to his claim against Dr. Durand. *See Dennie*, 2017 WL 2930462, at *4.

This is especially true in a case such as this one where the alleged actions of Dr. Durand, which purportedly render him liable for the alleged tort, consist of conduct that is entirely consistent with him being employed as Chair of the Department and Plaintiff's supervisor. *See* FAC ¶ 362 (Dr. Durand shared concerns about Plaintiff's ability to practice medicine with LifeBridge); ¶ 368 (Dr. Durand opposed Plaintiff's plan to train other radiologists for stroke therapy); ¶ 372 (Dr. Durand reported "progressive changes" in Plaintiff's "gait and mobility" to President of Medical Staff); ¶ 375 (Dr. Durand served on IPC).

Further, because this claim boils down to allegations that Plaintiff lost his employment because his supervisor made internal reports to the Hospital, the claim undoubtedly is one "arising out of [Plaintiff's] employment, including termination." As such, the claim is covered by the Arbitration Clause, and Plaintiff should be compelled to arbitrate it as well.

**E. Plaintiff's Claim for Gross Negligence is Subject to Arbitration.**

In the final remaining claim, Count 9, Plaintiff claims that the Hospital's IPC acted in a grossly negligent manner when it attempted to evaluate Plaintiff's possible impairment and that as a consequence, each individual member of the IPC is personally liable to Plaintiff. *See* FAC ¶¶ 466-475.

As committee members of the IPC, each Defendant to this claim is, by definition, an agent of the Hospital. *See*, *e.g.*, FAC ¶¶ 64-66 (IPC is a medical review committee of the Hospital); ¶¶ 12-14 (Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo are all employees of the Hospital). As such, they have standing to compel arbitration. *See Dennie*, 2017 WL 2930462, at *4.

Additionally, this claim falls squarely within the scope of the Arbitration Clause, as it alleges that: (i) Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo were members of the internal review committee of Plaintiff's employer; (ii) who acted negligently when attempting to evaluate whether Plaintiff was capable of performing his job duties in a safe manner; and (iii) that negligence caused Plaintiff's termination of employment. There would seem to be little question that this claim arises from Plaintiff's employment with the Hospital. As such, this claim should be compelled to arbitration as well.

**F. The Instant Action Should be Dismissed.**

Under MUAA, the Court is required to stay this action upon the filing of a motion to compel arbitration. *See* Md. Code, Cts. & Jud. Proc. § 3-209 (a)(1). Following the granting of that motion, a court may either continue that stay until the arbitration is completed (*id.* § 3-209(a)(2)) or it may dismiss the case without prejudice. *See Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 201, FN 7 (2012). For reasons of administrative ease and judicial efficiency, the Court should exercise its discretion and dismiss this matter.

**CONCLUSION**

For the reasons outlined above, Defendants respectfully request that this Court compel Plaintiff to arbitrate each of the claims asserted in the First Amended Complaint and dismiss the action without prejudice.

Dated: January 3, 2024.

Respectfully submitted,

Micah E. Ticatch, Esq., No. 1910160002
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650

Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of January 2024, I filed and served a copy of the foregoing via first class and electronic mail upon:

Tiffany M. Releford, Esq.
Samuel P. Morse, Esq.
Whiteford, Taylor & Preston, LLP
8830 Stanford Boulevard, Suite 400
Columbia, MD 21045
treledord@whitefordlaw.com
smorse@whitefordlaw.com
*Counsel for Plaintiff*

Micah E. Ticatch, Esq., No. 1910160002
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Defendants*